UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOSEPH MALVASIO,
GREGG MARCUS, and
CHRISTOPHER POLK,

                      Defendants.

Case No. 23-cr-396 (JGLC)

**MEMORANDUM OF LAW IN SUPPORT OF GREGG MARCUS'S MOTION FOR
SEVERANCE AND FOR DISMISSAL OF COUNT ONE**

Ilene Jaroslaw
Rachel J. Rodriguez
Sara Probber
**ELLIOTT KWOK LEVINE JAROSLAW
NEILS LLP**
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510

*Attorneys for Gregg Marcus*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.  SEVERANCE SHOULD BE GRANTED BECAUSE JOINDER OF MARCUS AND POLK IS IMPROPER AND WOULD UNDULY PREJUDICE MR. MARCUS ............. 2

    A.  Messrs. Marcus and Polk are Misjoined and Subject to Mandatory Severance Pursuant to Rule 8(b) ............................................................................................. 3

        1.  The S1 Indictment fails to allege a common plan or scheme. .................... 4

        2.  The S1 Indictment fails to allege a substantial identity of facts or participants. .................................................................................................. 6

    B.  Mr. Marcus Should Be Severed From Mr. Polk Pursuant to Rule 14(a) to Avoid Unduly Prejudicing Mr. Marcus ............................................................................. 8

II. COUNT ONE SHOULD BE DISMISSED AS DUPLICITOUS FOR COMBINING ACTS THAT ARE NOT PART OF A SINGLE CONTINUING SCHEME ................... 10

CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kotteakos v. United States*,
   328 U.S. 750 (1946) .................................................................................................................. 8

*United States v. Attancisio*,
   870 F.2d 809 (2d Cir. 1989) ...................................................................................................... 3

*United States v. Bertolotti*,
   529 F.2d 149 (2d Cir. 1975) .................................................................................................... 10

*United States v. Branker*,
   395 F.2d 881 (2d Cir. 1968) ...................................................................................................... 9

*United States v. Carrozza*,
   728 F. Supp. 266 (S.D.N.Y. 1990) ................................................................................... 6, 7, 8

*United States v. Feyrer*,
   333 F.3d 110 (2d Cir. 2003) ........................................................................................... 3, 5, 6, 7

*United States v. Gabriel*,
   920 F. Supp. 498 (S.D.N.Y. 1996) .......................................................................................... 11

*United States v. Giraldo*,
   859 F. Supp. 52 (E.D.N.Y. 1994) ..................................................................................... 4, 7, 8

*United States v. Halper*,
   590 F.2d 422 (2d Cir. 1978) ...................................................................................................... 6

*United States v. Joyner*,
   201 F.3d 61 (2d Cir. 2000) ........................................................................................................ 4

*United States v. Kouzmine*,
   921 F. Supp. 1131 (S.D.N.Y. 1996) ..................................................................................... 5, 6

*United States v. Lech*,
   161 F.R.D. 255 (S.D.N.Y. 1995) .......................................................................................... 5, 6

*United States v. Menashe*,
   741 F. Supp. 1135 (S.D.N.Y. 1990) ..................................................................................... 5, 6

*United States v. Munoz–Franco*,
   986 F. Supp. 70 (D.P.R. 1997) .................................................................................. 11

*United States v. Murray*,
   618 F.2d 892 (2d Cir. 1980) ...................................................................................... 10

*United States v. Nerlinger*,
   862 F.2d 967 (2d Cir. 1988) ........................................................................................ 4

*United States v. Ohle*,
   678 F. Supp. 2d 215 (S.D.N.Y. 2010) ................................................................. Passim

*United States v. Panza*,
   750 F.2d 1141 (2d Cir. 1984) ...................................................................................... 9

*United States v. Rajaratnam*,
   753 F. Supp. 2d 299 (S.D.N.Y. 2010) ...................................................................... 5, 9

*United States v. Rittweger*,
   524 F.3d 171 (2d Cir. 2008) ........................................................................................ 3

*United States v. Rooney*,
   866 F.2d 28 (2d Cir. 1989) ........................................................................................ 10

*United States v. Sturdivant*,
   244 F.3d 71 (2d Cir. 2001) ........................................................................................ 10

*United States v. Turoff*,
   853 F.2d 1037 (2d Cir. 1988) ........................................................................... 3, 4, 6, 7

*United States v. Tutino*,
   883 F.2d 1125 (2d Cir. 1989) .................................................................................... 10

*United States v. Tuzman*,
   301 F. Supp. 3d 430 (S.D.N.Y. 2017) ....................................................................... 11

*United States v. Vanwort*,
   887 F.2d 375 (2d Cir. 1989) ...................................................................................... 10

*United States v. Vega*,
   309 F. Supp. 2d 609 (S.D.N.Y. 2004) ......................................................................... 4

*Zafiro v. United States*,
   506 U.S. 534 (1993) ................................................................................................ 8, 9

**Statutes**

18 U.S.C. § 3161(h)(7)(A) ............................................................................................................. 9

**Rules**

Federal Rule of Criminal Procedure 8(a) ...................................................................................... 1
Federal Rule of Criminal Procedure 8(b) ............................................................................. Passim
Federal Rule of Criminal Procedure 14(a) ........................................................................ 1, 3, 8, 9

Defendant Gregg Marcus respectfully submits this memorandum of law in support of his motion for (1) severance from co-defendant Christopher Polk as improperly joined pursuant to Federal Rule of Criminal Procedure 8(b) and as substantially prejudicing Mr. Marcus pursuant to Rule 14(a), and (2) dismissal of Count One of the Superseding Indictment dated March 14, 2025, ECF No. 69 ("S1 Indictment" or "S1 Ind.") as duplicitous pursuant to Rule 8(a).  Trial of the remaining charge against Mr. Marcus should go forward as scheduled on May 27, 2025.

## PRELIMINARY STATEMENT

Though nominally charged as a single conspiracy, the S1 Indictment alleges two entirely separate and distinct "schemes":  (1) one involving Mr. Marcus and Joseph Malvasio operating a business formed by Mr. Marcus; and (2)  the other involving Mr. Polk (whom Mr. Marcus has never met) and Mr. Malvasio operating two businesses that Mr. Marcus has nothing to do with and likewise knows nothing about.

As further set forth herein, Rule 8(b) mandates severance because the S1 Indictment does not sufficiently allege that Mr. Marcus and Mr. Polk "participated in the same act or transaction, or in the same series of acts or transactions."  Severance is also appropriate under Rule 14(a) because trying Mr. Marcus and Mr. Polk together would visit irremediable, prejudicial spillover on Mr. Marcus.  And because Count One charges acts that cannot be characterized as part of a single continuing scheme, that count should be dismissed as duplicitous under Rule 8(a).

## FACTUAL BACKGROUND

On August 3, 2023, Messrs. Marcus and Malvasio were indicted on charges of wire fraud and wire fraud conspiracy in a 12-page speaking Indictment ("Ind."), ECF No. 2.  In short, the government alleged that Messrs. Marcus and Malvasio ran a hard money lending business called Global Capital Partners Fund ("GCPF") and used this company to solicit loan applications from individuals seeking capital for private and commercial real estate projects.  Ind. ¶ 1.

A year and a half later, and barely two months before the trial scheduled for May 27, 2025, the government filed the S1 Indictment, dated March 14, 2025. ("S1 Ind."). The S1 Indictment added Mr. Polk as a defendant and consists of six numbered paragraphs. *Id.* The first four paragraphs charge three counts. *Id.* Only the fifth and sixth paragraphs contain subparagraphs, and are limited to listing assets sought to be forfeited. *Id.*

Count Two of the S1 Indictment is a single paragraph charging Messrs. Marcus and Malvasio with wire fraud pertaining to loan applications submitted to GCPF (the "GCPF Activities"). *Id.* ¶ 3. Count Three is a single paragraph charging Messrs. Polk and Malvasio with wire fraud pertaining to loan applications submitted to two other businesses, Commercial Private Equity ("CPE") and Harbor Equity (the "CPE and/or Harbor Equity Activities"). *Id.* ¶ 4.

The S1 Indictment contains no factual allegations to support that Messrs. Marcus and Polk ever interacted with each other or were aware of the other's existence; that Mr. Marcus had any involvement with the CPE and/or Harbor Equity Activities or was aware of their existence; nor that Mr. Polk had any involvement with the GCPF Activities or was aware of their existence. Count One nonetheless alleges that Counts Two and Three are part of a single conspiracy in which Messrs. Marcus, Malvasio, and Polk "willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud" with the purpose of obtaining "advance fees" from loan applicants. *Id.* ¶¶ 1-2.

**ARGUMENT**

**I.    SEVERANCE SHOULD BE GRANTED BECAUSE JOINDER OF MARCUS AND POLK IS IMPROPER AND WOULD UNDULY PREJUDICE MR. MARCUS**

As further set forth below, Mr. Marcus is entitled to mandatory severance under Rule 8(b) because the S1 Indictment fails to allege any facts from which a reasonable person could conclude that the GCPF Activities and the CPE and/or Harbor Equity Activities were part of the

2

"same series of acts or transactions." In addition, the Court should order severance under Rule 14(a) to avoid the undue prejudice posed by a joint trial.

### A. Messrs. Marcus and Polk are Misjoined and Subject to Mandatory Severance Pursuant to Rule 8(b)

Where, as here, there is both joinder of defendants and joinder of offenses, Rule 8(b) is invoked to test the validity of the joinder. *United States v. Turoff,* 853 F.2d 1037, 1043 (2d Cir. 1988). Joinder is permissible under Rule 8(b) if the defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Second Circuit has interpreted this to permit joinder only when the allegedly unlawful acts are "'unified by some substantial identity of facts or participants or arise out of a common plan or scheme.'" *United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003) (quoting *United States v. Attancisio*, 870 F.2d 809, 815 (2d Cir. 1989)).

When analyzing the propriety of joinder under Rule 8(b), courts use "a common sense approach," *Feyrer*, 333 F.3d at 114, that "turns on what is alleged in the indictment." *United States v. Rittweger*, 524 F.3d 171,178 (2d Cir. 2008); *United States v. Ohle*, 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010) (granting motion and declining to consider government's allegations, not contained in the indictment, regarding connections between different conspiracies). Under this analysis, joinder is permitted only where the allegations in the indictment are such that "a reasonable person would easily recognize" that the unlawful acts alleged are part of a single scheme. *Turoff,* 853 F.2d at 1044. Severance under this Rule is as of right: "[u]nless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice." *Feyrer*, 333 F.3d at 114.

### 1.     The S1 Indictment fails to allege a common plan or scheme.

While "a *non-frivolous* conspiracy charge" is generally "sufficient to support joinder of defendants," *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir. 1988) (emphasis added), "[i]t is equally clear . . . that 'defendants charged with two separate—albeit similar—conspiracies having one common participant are not, without more, properly joined.'" *United States v. Giraldo*, 859 F. Supp. 52, 55 (E.D.N.Y. 1994), *aff'd,* 80 F.3d 667 (2d Cir. 1996) (internal quotation marks omitted); *cf. United States v. Vega*, 309 F. Supp. 2d 609, 614 (S.D.N.Y. 2004) (joinder was proper where "[t]here is nothing before the Court from which to conclude . . . that it improperly combines what should be two or more distinct conspiracies."). Accordingly, "whether the joinder of defendants in two conspiracies is warranted must be determined on a case-by-case basis." *Rittweger*, 524 F.3d at 178.

Courts have held that joinder is proper where "one scheme stemmed from the other" such that one scheme "is part and parcel" of the other, as these circumstances form a "a key link between the two offenses" that "provides a sound basis for joinder." *Turoff,* 853 F.2d at 1044. For instance, joinder of drug and firearms schemes was proper when "the arson was ordered to 'eliminate drug competition.'" *United States v. Joyner*, 201 F.3d 61, 75 (2d Cir. 2000). This is so because there is "a logical nexus between the transactions" that makes them "part of the same series of acts or transactions." *Id.* Conversely, a weak or tenuous connection between schemes is insufficient to provide a "key link," such as when a portion of funds generated by a referral fee scheme was used to finance a tax fee scheme, but the transfer of funds appeared to be only "an ancillary aspect." *Ohle*, 678 F. Supp. 2d at 225. Likewise, a court found that two immigration fraud schemes—one involving all co-defendants, and a second started by two co-defendants after they had a falling out with the others—were only part of "the same series of acts or transactions" in "the broadest sense . . . just as the 1995 World Series was part of the same series of acts or

4

transactions that began with Abner Doubleday." *United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996).

Knowledge of the other conspiracy is also an "indicator of whether or not there is a common scheme or purpose." *Ohle*, 678 F. Supp. 2d at 225. As one court astutely observed, a "plan cannot be called 'common' [where a single defendant] is the only one alleged to be aware of it." *United States v. Menashe,* 741 F. Supp. 1135, 1138 (S.D.N.Y. 1990). For instance, joinder of two "pump and dump" schemes was proper, even though only one of three defendants was charged with participating in both schemes, because all defendants were aware of both schemes and the others' participation in them. *Feyrer*, 333 F.3d at 114. Moreover, the two schemes shared a common plan of generating income for the same brokerage firm through fraudulent stock transactions. *Id.* On the other hand, joinder of two schemes to sell American military equipment to foreign powers was improper where only one of defendants was charged with participating in both schemes, and there were no allegations in the indictment to support that the co-defendants in the first scheme were aware of or joined in the second scheme. *Menashe,* 741 F. Supp. 1139; *see also Ohle*, 678 F. Supp. 2d at 225 (granting motion to sever where there were no allegations that defendant was aware of second scheme); *Kouzmine*, 921 F. Supp. at 1133 (same); *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y. 1995) (same).

"The Indictment must be measured under Rule 8(b) not by what the government could have alleged or what it hopes to prove but by the language the government has actually used in charging the defendants with their alleged crimes." *United States v. Rajaratnam*, 753 F. Supp. 2d 299, 307 (S.D.N.Y. 2010). Here, Count One of the S1 Indictment states in a conclusory fashion that Messrs. Marcus, Polk, and Malvasio conspired with each other. There are no overt acts or other facts alleged in support of Count One. *See S1 Ind.* ¶ 1. Under even a generous reading, the

5

two substantive counts allege two entirely separate schemes: (1) Messrs. Marcus and Malvasio participating in the GCPF Activities, which Mr. Polk is not alleged to be aware of or have participated in, and (2) Messrs. Polk and Malvasio participating in the CPE and/or Harbor Equity Activities, which Mr. Marcus is not alleged to have been aware of or participated in.

A plan cannot be deemed "common" when only Mr. Malvasio is alleged to be aware of both purported schemes. *See Menashe,* 741 F. Supp. at 1138. Accordingly, severance should be granted, because "Rule 8(b) cannot possibly be read so broadly if it is to have any practical meaning." *Kouzmine*, 921 F. Supp. at 1133.

### 2. The S1 Indictment fails to allege a substantial identity of facts or participants.

Under the "substantial identity of facts or participants" standard, joinder is proper where "if the district court had tried the[ ] two defendants separately, the evidence at one trial would essentially [have] duplicate[d] the evidence at the other." *Feyrer,* 333 F.3d at 114. Likewise, joinder is proper where "proof of one scheme is indispensable for a full understanding of the other." *Turoff,* 853 F.2d at 1044. But joinder is improper where "[c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other" and "proof of the one act neither constituted nor depended upon proof of the other." *United States v. Halper,* 590 F.2d 422, 429 (2d Cir. 1978). Further, "it is well settled . . . that two separate transactions do not constitute a series within the meaning of Rule 8(b) merely because they are of a similar character or involve one or more common participants." *Lech*, 161 F.R.D. at 256; *United States v. Carrozza*, 728 F. Supp. 266, 270 (S.D.N.Y. 1990) (noting that "the mere existence of similarities between some of the actors or some of the crimes committed will not suffice").

For example, the court found that tax and mail fraud schemes were properly joined where "the tax fraud hinged on the fraudulent activities taken to advance the [mail fraud] conspiracy."

6

*Turoff*, 853 F.2d at 1044.  The mail fraud charges in that case stemmed from a plan to exploit the power of one of the defendants, as the New York City Taxi and Limousine Commission Chairman, to market and produce a taxi meter, while the tax fraud charges stemmed from accounts and loans obtained from a credit union that promised not to report interest earned to the IRS, for the purpose of financing the taxi meter/mail fraud scheme.  *Id.* at 1039.  Accordingly, the court found that the "proof of one scheme is indispensable for a full understanding of the other." *Id.* at 1044.  In another case, the court found that two schemes were properly joined where defendants who did not directly participate in both schemes became aware of each others' involvement in the fraud through a joint meeting; thus "even if the district court had tried these two defendants separately, the evidence at one trial would essentially duplicate the evidence at the other . . . ." *Feyrer*, 333 F.3d at 114.

Courts are clear, however, that "[t]he existence of a single, common participant . . . does not satisfy the requirements of Rule 8(b)." *Giraldo*, 859 F. Supp. at 55.  In one case, the court rejected the government's contention that there was a "logical relationship" between the defendants and offenses in two conspiracies to contribute cocaine simply because all drug sales were made to the same cooperating witness. *Giraldo*, 859 F. Supp. at 54.  In finding that the schemes were improperly joined, the court noted that the sales were temporally disparate, there was no indication that three of the four defendants "knew of or were involved in any overall scheme," and only one defendant was charged in both conspiracies. *Id.* at 55.  Likewise, in another case, the court rejected the government's contention that multiple schemes involving "usurious loans followed by illicit collection activities" were properly joined merely because each scheme used defendant Carr to collect on the debts. *Carrozza*, 728 F. Supp. at 269.  In ordering severance, the Court noted that the problem with the government's "implicit[]

7

suggesti[on] that a 'wheel conspiracy' exists, with Carr at the hub and the various defendants connected to him by the wheel's spokes" was that "there is virtually no outer rim" connecting the other defendants to each other. *Id.* at 270; *see also Kotteakos v. United States,* 328 U.S. 750, 755 (1946) ("Thieves who dispose of their loot to a single receiver—a single 'fence'—do not by that fact alone become confederates . . . .").

Here, separate trials of Messrs. Marcus and Polk would not "duplicate the evidence of the other," given that GCPF's business records, emails, and activities are not alleged to have any overlap between those of CPE and/or Harbor Equity. Rather, much like in *Giraldo* and *Carr*, the only link evident from the face of the S1 Indictment between the two schemes is the presence of a single defendant: Joseph Malvasio. That is, there is no "rim" alleged between Messrs. Marcus and Polk. Because "[t]he existence of a single, common participant . . . does not satisfy the requirements of Rule 8(b)," severance should be granted. *Giraldo*, 859 F. Supp. at 55

### B. Mr. Marcus Should Be Severed From Mr. Polk Pursuant to Rule 14(a) to Avoid Unduly Prejudicing Mr. Marcus

Pursuant to Rule 14(a), the Court may order separate trials of defendants that are otherwise properly joined under Rule 8(b) to avoid undue prejudice. *Zafiro v. United States,* 506 U.S. 534, 538 (1993). Although Mr. Marcus is entitled to mandatory severance because joinder with Mr. Polk fails to satisfy the requirements of Rule 8(b), as an additional ground, Mr. Marcus also should be severed from Mr. Polk because a joint trial with Mr. Polk poses a risk of substantial prejudice to Mr. Marcus.

The Supreme Court has held that severance should be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence," such as "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant

8

were tried alone is admitted against a codefendant." *Zafiro,* 506 U.S. at 539.  Likewise, severance under Rule 14(a) is appropriate when prejudice is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir. 1984).

      The prejudicial danger described in *Zafiro* is precisely the danger that will befall Mr. Marcus if a severance is not granted.  In a joint trial of Messrs. Marcus and Polk, the jury will hear evidence pertaining to *five years'* worth of loan applications submitted to CPE and/or Harbor Equity, when Mr. Marcus is not alleged to have participated in or known anything about the CPE and/or Harbor Equity Activities, nor to have had any involvement with Mr. Polk.  *Cf. Rajaratnam*, 753 F. Supp. 2d at 316 (noting that charges severed under Rule 8(b) would also be appropriately severed under Rule 14(a) because they "have nothing to do with [defendant] and involve dozens of different stocks and multiple other sources").  Moreover, as discussed above, there is no judicial economy to be realized by joint trials of two unrelated and distinct schemes.

      Accordingly, severance should be granted because trying the two schemes together would create the risk that "[t]he jury is subjected to weeks of trial dealing with dozens of incidents of [alleged] criminal misconduct which do not involve [Mr. Marcus] in any way," such that "mounting proof of the guilt of one is likely to affect another."  *United States v. Branker*, 395 F.2d 881, 888 (2d Cir. 1968) (quotation marks omitted).

      Finally, while Mr. Marcus recognizes that the Court has excluded certain periods of time as provided in 18 U.S.C. § 3161(h)(7)(A) pursuant to the Speedy Trial Act, he is eager vindicate his Constitutional speedy trial rights and has advocated for a trial as early as January 2025.  *See* August 7, 2024 Conference Transcript at 7:18-21.

## II. COUNT ONE SHOULD BE DISMISSED AS DUPLICITOUS FOR COMBINING ACTS THAT ARE NOT PART OF A SINGLE CONTINUING SCHEME

An indictment is duplicitous if it joins two or more distinct crimes in a single count, "in contravention of [Rule] 8(a)'s requirement that there be 'a separate count for each offense,'" and the defendant is thereby prejudiced. *United States v. Sturdivant,* 244 F.3d 71, 75 (2d Cir. 2001). That is, "acts that could be charged as separate counts of an indictment" can only be combined into "a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989).

The Second Circuit has recognized that application of the duplicity doctrine to conspiracy indictments presents "unique issues." *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980). "A single conspiracy may be found where there is 'mutual dependence and assistance among the [participants], a common aim or purpose . . . or a permissible inference, from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture.'" *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989) (quoting *United States v. Bertolotti*, 529 F.2d 149, 154 (2d Cir. 1975)). Although each member is not required to have conspired directly with every other member, at a minimum, each member must have "participated in the alleged enterprise with a consciousness of its general nature and extent." *United States v. Rooney*, 866 F.2d 28, 32 (2d Cir. 1989).

A conspiracy count will survive a duplicity challenge "[i]f the Indictment on its face *sufficiently* alleges a single conspiracy." *Ohle*, 678 F. Supp. 2d at 222 (emphasis added). Accordingly, a conspiracy count was found not duplicitous where the indictment contained "boilerplate allegations of a single conspiracy" supported by factual allegations and overt acts that either could be interpreted as a single conspiracy, or two conspiracies in which one covered

10

up the other.  *United States v. Gabriel*, 920 F. Supp. 498, 504 (S.D.N.Y. 1996).  Likewise, a conspiracy count passed muster where the factual allegations and overt acts supporting "boilerplate allegations" of a single conspiracy alleged a "mutual dependence and assistance" across the schemes because  "the two frauds occurred at the same time and had common participants," and "compensation was paid amongst the co-conspirators . . . and across the two frauds."  *Ohle*, 678 F. Supp. 2d at 223.  In another case, the conspiracy count survived challenge, even though one defendant was not alleged to have participated directly in the second scheme, because the indictment alleged that the second scheme was undertaken "with [his] knowledge and approval" and both schemes shared the objective of manipulating the same company's stock.  *United States v. Tuzman*, 301 F. Supp. 3d 430, 449 (S.D.N.Y. 2017).

In *Ohle*, *Gabriel*, and *Tuzman*, a single conspiracy was sufficiently alleged because there were factual allegations on the face of the indictment that could support the existence of a single conspiracy—even if they were also susceptible of a different interpretation—and case law would suggest that this is usually the case.  *Ohle*, 678 F. Supp. 2d at 222 (noting that "courts in this Circuit have repeatedly denied motions to dismiss a count as duplicitous").  The case at bar, on the other hand, is the rare exception:  a conspiracy count entirely devoid of factual allegations.  And as discussed above, the two substantive counts offer no support, as they can only be interpreted as alleging two entirely separate schemes.

Under these circumstances, Count One of the S1 Indictment should be dismissed as duplicitous.  *Cf. United States v. Munoz–Franco*, 986 F. Supp. 70, 71-72 (D.P.R. 1997) (dismissing conspiracy count as duplicitous where the indictment's "description of the overt acts is neatly divided between two distinct sets of co-conspirators" and each set of allegations does not mention the co-conspirators from the other).

## CONCLUSION

For the reasons set forth above, the Court should order the severance of Mr. Marcus's trial from Mr. Polk's and should dismiss Count One of the S1 Indictment. We respectfully request that Mr. Marcus's trial proceed as scheduled on May 27, 2025.

Dated: New York, NY  
      March 26, 2025

ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

/s/ *Ilene Jaroslaw*  
Ilene Jaroslaw  
Rachel J. Rodriguez  
Sara Probber  

One Grand Central Place  
60 East 42nd Street, Suite 1570  
New York, NY 10165  
(212) 321-0510  
ijaroslaw@ekljnlaw.com  
rrodriguez@ekljnlaw.com  
sprobber@ekljnlaw.com  

*Attorneys for Gregg Marcus*