UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOSEPH MALVASIO,
GREGG MARCUS, and
CHRISTOPHER POLK,

Defendants.

Case No. 23-cr-396 (JGLC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF GREGG MARCUS'S
MOTION FOR SEVERANCE AND FOR DISMISSAL OF COUNT ONE**

Ilene Jaroslaw
Rachel J. Rodriguez
Sara Probber
**ELLIOTT KWOK LEVINE JAROSLAW
NEILS LLP**
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510

*Attorneys for Gregg Marcus*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I. COUNT ONE SHOULD BE DISMISSED AS DUPLICITOUS BECAUSE THE S1 INDICTMENT ON ITS FACE FAILS TO SUFFICIENTLY ALLEGE A SINGLE CONSPIRACY ................................................................................................................... 2

II. SEVERANCE SHOULD BE GRANTED BECAUSE A FRIVOLOUS CONSPIRACY CHARGE CANNOT SUPPORT JOINDER OF DEFENDANTS .................................... 4

    A. The Government Should Not Be Permitted to Use a Duplicitous Count to Circumvent the Requirements of Rule 8(b) ............................................................... 4

    B. The Government Relies on Similarities Between the Two Alleged Schemes, Which is Not a Basis for Joinder Under Rule 8(b) .................................................. 5

    C. The Government Fails to Explain How a Joint Trial of Separate Schemes Will Result in Judicial Economies Without Prejudicing Mr. Marcus ............................. 6

CONCLUSION ............................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Friedman*,
  854 F.2d 535 (2d Cir. 1988) .................................................................................................. 4

*United States v. Gabriel*,
  920 F. Supp. 498 (S.D.N.Y. 1996) ......................................................................................... 4

*United States v. Giraldo*,
  859 F. Supp. 52 (E.D.N.Y. 1994) ........................................................................................... 6

*United States v. Greenberg*,
  2022 WL 827304 (S.D.N.Y. Mar. 9, 2022) ............................................................................ 2

*United States v. Johansen*,
  56 F.3d 347 (2d Cir. 1995) ..................................................................................................... 4

*United States v. Nerlinger*,
  862 F.2d 967 (2d Cir. 1988) ................................................................................................... 5

*United States v. Ohle*,
  678 F. Supp. 2d 215 (S.D.N.Y. 2010) ............................................................................. 2, 3, 4

*United States v. Percoco*,
  2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) ........................................................................ 3

*United States v. Rajaratnam*,
  736 F. Supp. 2d 683 (S.D.N.Y. 2010) ................................................................................ 2, 3

*United States v. Szur*,
  97 CR 1998 WL 132942 (S.D.N.Y. Mar. 20, 1998) ............................................................... 3

*United States v. Turoff*,
  853 F.2d 1037 (2d Cir. 1988) ................................................................................................. 5

*United States v. Tuzman*,
  301 F. Supp. 3d 430 (S.D.N.Y. 2017) .................................................................................... 3

*Zafiro v. United States*,
  506 U.S. 534 (1993) ............................................................................................................... 6

**Rules**

Federal Rule of Criminal Procedure 8(a) .................................................................................. 1, 5
Federal Rule of Criminal Procedure 8(b) ............................................................................. 1, 4, 5
Federal Rule of Criminal Procedure 14(a) ............................................................................... 6, 1

Defendant Gregg Marcus respectfully submits this reply memorandum of law in further support of his motion for (1) severance from co-defendant Christopher Polk as improperly joined pursuant to Federal Rule of Criminal Procedure 8(b) and as substantially prejudicing Mr. Marcus pursuant to Rule 14(a), and (2) dismissal of Count One of the Superseding Indictment dated March 14, 2025, ECF No. 69 ("S1 Indictment" or "S1 Ind.") as duplicitous pursuant to Rule 8(a); and in response to the Government's Opposition, ECF No. 103 ("Opposition" or "Opp. Br.").

## PRELIMINARY STATEMENT

In its Opposition, the government spends four pages postulating why two separate and distinct alleged schemes really should be viewed as one. Opp. Br. at 3-6. First, the Court should disregard this narrative because it appears nowhere in the S1 Indictment, which is the only relevant inquiry at this stage. Second, even if the Court were to consider this newly expanded account, the government *still* fails to allege facts to support that Mr. Marcus was aware of or had any involvement with Polk, CPE, or Harbor Equity. And, as dictated by both common sense and the law, Mr. Marcus cannot participate in a conspiracy he is not alleged to know anything about.

At best, the S1 Indictment describes separate businesses that operate similarly, competing for customers in the hard money space. But that is not a "common plan" in anything but the broadest sense, just as Starbucks and Dunkin' Donuts might be said to share a "common plan" to peddle caffeine on the morning commute. Nor does repeatedly harping on allegedly similar features convert two alleged "schemes" into one. *See e.g.*, Opp. Br. at 1-2, 3, 9, 10.

Because the S1 Indictment fails to sufficiently allege a single conspiracy on its face, the Court should enter an order (1) dismissing Count One as duplicitous and (2) severing Mr. Marcus's trial from that of Mr. Polk, which we respectfully request should proceed as scheduled on May 27, 2025.

**ARGUMENT**

**I.   COUNT ONE SHOULD BE DISMISSED AS DUPLICITOUS BECAUSE THE S1 INDICTMENT ON ITS FACE FAILS TO SUFFICIENTLY ALLEGE A SINGLE CONSPIRACY**

Even the government admits, as it must, that whether a count is duplicitous turns on whether the indictment "sufficiently alleges a single conspiracy" *on its face*.  Opp. Br. at 8 (citing *United States v. Rajaratnam,* 736 F. Supp. 2d 683, 688 (S.D.N.Y. 2010)).  Though the government urges this Court to put the cart before the horse, *see* Opp. Br at 11, it is only after clearing this preliminary, basic hurdle that "the question of whether a single conspiracy or multiple conspiracies exists [becomes] a question of fact for the jury."  *United States v. Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010).

Here, the S1 Indictment conclusorily alleges that Messrs. Marcus and Polk "willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud."  S1 Ind. ¶ 1.  The S1 Indictment does not allege any facts to explain when, where, or by what means two men who are not alleged to have even met managed to conspire.  Nor does it allege that Mr. Marcus is even aware of Mr. Polk, CPE, or Harbor Equity.  While the "facial test" is not a high bar, *see Ohle*, 678 F. Supp. 2d at 223, to accept that an indictment's naked assertion of a conspiracy passes muster would set the bar below the floor.

Unsurprisingly, the government does not cite a single case to support the proposition that an indictment sufficiently alleges a single conspiracy *merely by stating the conspiracy exists*.  *See* Opp. Br. at 8-10.  Rather, the indictment in each case is replete with factual allegations to support the conspiracy that is alleged:

- ***United States v. Greenberg*, No. 21-CR-92 (AJN), 2022 WL 827304, at *11 (S.D.N.Y. Mar. 9, 2022)** (indictment alleges that "Russia America employees Mosha and Danskoi referred clients to non-employees, including Greenberg, to assist in the preparation and submission of fraudulent asylum applications," other defendants "prepared written applications," and Greenberg's role "was to

2

'knowingly prepare[ ] and encourage[ ] certain Russian America clients to lie under oath about their fraudulent asylum claims' and to accompany them to their interviews");

- *United States v. Tuzman*, 301 F. Supp. 3d 430, 437-38 (S.D.N.Y. 2017) (indictment alleges that defendant "induced Stephen Maiden to have his hedge fund, Maiden Capital, invest $1 million in the KIT digital SPIV"; was aware of more than $5.5 million in trading losses when that investment was redirected to Enable without Maiden's consent; wired "hundreds of thousands of dollars to Maiden Capital" to conceal said losses; and had "knowledge and approval" of co-defendant's actions in subsequently "induc[ing] Maiden to purchase more than $2 million worth of KIT digital stock");

- *United States v. Percoco*, No. 16-CR-776 (VEC), 2017 WL 6314146, at *12 (S.D.N.Y. Dec. 11, 2017) (indictment alleges that defendants "collaborated in secretly tailoring the Syracuse and Buffalo RFPs by, among other things, exchanging through Howe ideas for potential qualifications to be included in the Syracuse and Buffalo RFPs");

- *United States v. Ohle*, 678 F. Supp. 2d 215, 219–20 (S.D.N.Y. 2010) (indictment alleges that defendant "agreed to pay referral fees to third parties who referred a client who ultimately entered into a HOMER tax shelter," "contacted Bradley to prepare invoices for referral fees in connection with Client Group 1's HOMER tax shelter, despite the fact that Bradley performed no services in connection with that deal," approached a client with whom he had "an established business relationship" to invest in a hedge fund, and received a 5% commission on each hedge fund transaction despite telling the client "he would not receive any commission on her investments");

- *United States v. Rajaratnam*, 736 F. Supp. 2d 683, 686 (S.D.N.Y. 2010) (referencing entire section of Indictment with factual allegations regarding conspiracy);[1]

- *United States v. Szur*, No. S5 97 CR 108 (JGK), 1998 WL 132942, at *1-2 (S.D.N.Y. Mar. 20, 1998) (indictment alleges that Securitek's majority stockholder conspired with owner of securities brokerage to sell Securitek stock to brokerage's customers, including jointly recruiting 3 co-defendants to sell stock, and compensating owner and salespeople with up to 50% of sale proceeds); and

---

[1] In support of the conspiracy count, the indictment alleges that the defendant is a hedge fund portfolio manager who received inside information regarding several companies from his co-defendant/colleague (including in a January 2009 phone call during which the defendant received insider information regarding Atheros), after which the defendant "purchased and sold securities based on such information." Superseding Indictment, *United States v. Rajaratnam*, 09-cr-1184, ECF No. 48 (Feb. 9, 2010).

3

- *United States v. Gabriel*, **920 F. Supp. 498, 503 (S.D.N.Y. 1996)** (indictment alleges that after defendant Vitti agreed with defendant Gabriel that "disclosure of the full extent of improper repairs" directed by Gabriel prior to Vitti's hiring would cause company to "suffer extensive negative publicity," Vitti and Gabriel "agreed to conceal the true extent of the improper substitution," to which end Vitti "made numerous false representations to Air India designed to contain the expanding investigation").[2]

Against this backdrop, it is difficult to decide which is more shocking: the S1 Indictment's complete and utter failure to allege supporting facts, or the government's insistence that Count One nonetheless passes a facial test.[3]

Because no case holds that the mere invocation of the words "combined, conspired, confederated, and agreed" sufficiently alleges a single conspiracy, Count One should be dismissed as duplicitous.

## II. SEVERANCE SHOULD BE GRANTED BECAUSE A FRIVOLOUS CONSPIRACY CHARGE CANNOT SUPPORT JOINDER OF DEFENDANTS

### A. The Government Should Not Be Permitted to Use a Duplicitous Count to Circumvent the Requirements of Rule 8(b)

The government argues, in essence, that because the S1 Indictment improperly combines two alleged schemes into a single count, Mr. Marcus is foreclosed from relying on the well-

---

[2] The government also cites two cases in the post-trial context, in which circumstance the Court considers evidence adduced at trial, not merely the face of the indictment. *See United States v. Johansen*, 56 F.3d 347, 351 (2d Cir. 1995), *as amended* (May 11, 1995) (reversing and remanding for a new trial because evidence at trial showed several conspiracies and defendant suffered prejudice by not being severed); *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) (rejecting defendant's argument that "his RICO conviction should be reversed because the evidence at trial demonstrated the existence of multiple conspiracies instead of the single RICO conspiracy charged in the indictment").

[3] Given that the test is whether an indictment "on its face sufficiently alleges a single conspiracy," *Ohle*, 678 F. Supp. 2d at 222, the government's offer to "prove at trial that Marcus, Malvasio, and Polk participated in a single conspiracy" is misplaced. Opp. Br. at 10. Nonetheless, it is worth noting that if the government truly were prepared to prove the existence of a single conspiracy in less than two months' time, surely it would have pointed to evidence indicating that *Mr. Marcus* is aware of Mr. Polk and the CPE and/or Harbor Equity Activities.

4

established body of case law holding that to support joinder, an indictment must allege facts from which "a reasonable person would easily recognize" that the unlawful acts alleged are part of a single scheme. *United States v. Turoff,* 853 F.2d 1037, 1044 (2d Cir. 1988).

But as the government correctly notes, "'[t]he established rule is that a ***non-frivolous*** conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." Opp Br. at 12 (quoting *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir. 1988)) (emphasis added). For the reasons set forth above and in Mr. Marcus's opening brief, Count One falls well short of the non-frivolous mark, and the Court should not permit the government to make an end-run around the requirements of Rule 8(b) by merely reciting that a single conspiracy exists.

### B. The Government Relies on Similarities Between the Two Alleged Schemes, Which is Not a Basis for Joinder Under Rule 8(b)

Both the S1 Indictment and the Opposition's four-page narrative make clear that government's arguments in favor of joinder rely heavily on similarity between the two alleged schemes. Counts Two and Three of the bare-bones S1 Indictment are identical, but for swapping out the names of defendants and entities. *See* S1 Ind. ¶¶ 3-4. In its Opposition, the government repeatedly comments on the alleged similarity of the schemes, alleging that although GCPF, CPE, and Harbor Equity are "technically separate entities, the defendants used these businesses . . . in the exact same way," with "identical methods of carrying out the conspiracy," and "Marcus and Polk had the same role . . . [and] repeatedly told the same lies." Opp. Br. at 3, 9, 10-11; *see also id.* at 1-2, 18.

But it is black-letter law that "[u]nlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.'" *Turoff*, 853 F.2d at 1042. And it "is equally clear . . . that 'defendants charged with two separate—albeit similar—conspiracies having one common participant are not, without more, properly

5

joined.'" *United States v. Giraldo*, 859 F. Supp. 52, 55 (E.D.N.Y. 1994), *aff'd,* 80 F.3d 667 (2d Cir. 1996). Notably, neither the S1 Indictment nor the newly concocted narrative (which is not relevant to this analysis in any case) allege anything to support the requirement of "more."[4]

### C. The Government Fails to Explain How a Joint Trial of Separate Schemes Will Result in Judicial Economies Without Prejudicing Mr. Marcus

Although the government accuses Mr. Marcus of "[i]gnor[ing] tremendous gains in judicial economy that would be realized through a single trial" because of the allegedly similar operations of the schemes, Opp. Br. at 18, it also does not and cannot explain how evidence regarding the operations of GCPF has any bearing whatsoever on the operations of the entirely separate businesses CPE and Harbor Equity. Even if the operational similarities were true, the government must still prove that *each* of the businesses operated in that fashion. The suggestion Mr. Polk's alleged involvement in and operation of CPE and Harbor Equity might be used to extrapolate that Mr. Marcus engaged in the same allegedly unlawful conduct with respect to GCPF is precisely the kind of undue prejudice that Rule 14(a) was designed to protect against. *See Zafiro v. United States,* 506 U.S. 534, 538 (1993).

Finally, even if the trial were to proceed on the scheduled date, Mr. Marcus already will have been living under the shadow of indictment for nearly *two years*. The government does not even attempt to address the unfair prejudice to Mr. Marcus from unnecessarily forcing him to wait for Mr. Polk to be trial-ready, when Mr. Polk's counsel is not yet even in a position to say how much longer that will take.

---

[4] That the two schemes allegedly "defrauded some of the same victims," Opp. Br. at 11, does not support the existence of a single scheme any more than "some of the same" customers dining at both McDonald's and Burger King supports the existence of an overarching french-fry conspiracy.

6

## CONCLUSION

For the reasons set forth above, the Court should order the severance of Mr. Marcus's trial from Mr. Polk's and should dismiss Count One of the S1 Indictment. We respectfully request that Mr. Marcus's trial proceed as scheduled on May 27, 2025.

Dated: New York, NY  
April 4, 2025

ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

*/s/ Ilene Jaroslaw*  
Ilene Jaroslaw  
Rachel J. Rodriguez  
Sara Probber

One Grand Central Place  
60 East 42nd Street, Suite 1570  
New York, NY 10165  
(212) 321-0510  
ijaroslaw@ekljnlaw.com  
rrodriguez@ekljnlaw.com  
sprobber@ekljnlaw.com

*Attorneys for Gregg Marcus*