

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javitz Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 8, 2026

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re:    ***United States v. Malvasio, et al.*, S1 23 Cr. 396 (JMF)**

Dear Judge Furman:

   The Government respectfully writes to address the admissibility of certain out-of-court communications and statements that the Government anticipates eliciting through the testimony of its first witness, Matel Anasta.  Specifically, the Government anticipates that Anasta will testify about a series of conversations between Anasta and the appraiser hired by the defendants to appraise Anasta's property in 2021.  To the extent those statements are being offered for their truth, they are admissible as statements of the defendants' agents under Rule 801(d)(2)(D).  And, any statements that arguably fall outside the agency relationship would nonetheless be admissible for their effect on the listener and to provide context for the victim's (and the defendants') subsequent actions.

   **I.  Relevant Background**

   In late 2020 and early 2021, Anasta and his brother applied for a $1.1 million loan from the defendants and Global Capital Partners Fund ("GCPF") in connection with an upstate sports facility and recreational center that Anasta was seeking to expand and develop.  Anasta is expected to testify that, after paying a letter of intent fee and a commitment fee to the defendants, the defendants demanded approximately $12,000 for a so-called "appraisal fee."  In a telephone call to explain the appraisal fee, Malvasio claimed that the high fee was being charged directly by the appraisal company.  Based on that representation, Anasta will testify that he agreed to pay the additional appraisal fee.  In truth, and as the underlying records and email correspondence associated with that appraisal reflect, the defendants had marked up the cost of the appraisal by approximately $9,000.

   Anasta is expected to testify about three interactions with the defendants' appraisal firm over the course of his application for a loan.  First, during the site inspection for his property, when Anasta remarked on the high cost of the appraisal, the appraiser who came to inspect the property, Ericka Simmons, asked how much Anasta was paying for the appraisal.  When Anasta disclosed the fee that the defendants had charged, Simmons told Anasta that the fee Anasta had paid was much higher than the fee Simmons and her company had charged the defendants for the appraisal. Second, following the site inspection, Simmons—acting on behalf of the defendants—emailed

Anasta to collect a number of additional documents from Anasta in connection with her preparation of the appraisal report.  *See* MA-105.  In that correspondence, Simmons confirmed when the appraisal report had been delivered to the defendants, and told Anasta that no additional information was needed.

Third, and finally, shortly after the delivery of Simmons' report to the defendants, Anasta is expected to testify that Malvasio called Anasta and began accusing Anasta of improperly influencing the appraisal.  On that call, Malvasio revealed that Malvasio disagreed with the value that the appraiser had reached, and disclosed that Simmons had appraised the property at approximately $2.2 million—i.e., the value Anasta was required to demonstrate in order to be eligible for the loan he had applied for. [1]  Following that call, Malvasio emailed Simmons' supervisor, Bruce Greenberg, and demanded that the appraisal report be changed.  In June, the appraisal was ultimately revised to reflect a reduced value of $1.695 million, which Malvasio conveyed to Anasta in an email.  Shortly after receiving that email, Anasta repeatedly called Simmons to ask about the status of the appraisal.  On that call, which the defendants seek to preclude, Simmons told Anasta that the defendants had been pressuring her and her company to change the appraisal value, that the defendants were an important client for Simmons's appraisal firm, that Simmons was afraid to sign the revised appraisal report because she feared she would lose her license if she did, and warned Anasta to "watch out" for the defendants.  Immediately following his call with Simmons, Anasta called a victim hotline for the Federal Bureau of Investigation ("FBI"), and, shortly after, emailed the defendants demanding a refund and accusing them of attempting to tamper with the appraisal.  The defendants ignored Anasta's emails, after which Anasta published a public review of the defendants' company alerting others to the defendants' actions.  The defendants never returned Anasta's fees to him, and, in fact, hired an attorney who threatened to sue Anasta if he did not remove his negative review.

## II.  Applicable Law

The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is admissible only if it falls within an enumerated exception. Fed. R. Evid. 802. However, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note. Thus, a statement offered to show its effect on the listener is not hearsay. *Id.*; *see also United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice.").

Federal Rule of Evidence 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's agent or

---

[1] Both the initial appraisal report and the revised appraisal report are consistent with what Malvasio and Simmons told Anasta: namely, that the property had originally been appraised at $2.2 million; that its value was subsequently revised to $1.65 million; and that the appraisal report remained unsigned and in draft format. *Compare* GX 8211 (May 2021 appraisal report) with GX 8210 (June 2021 appraisal report).

employee on a matter within the scope of that relationship and while it existed." To admit a statement under this rule, the court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). An agency relationship requires "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994) (superseded by statute on other grounds) (quoting *Restatement (Second) of Agency* § 1, cmt. b (1958)). As the Second Circuit has explained, "admissibility under this rule should be granted freely," and there is a "liberal" standard for admissibility rooted in the understanding that agents and employees are usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537.

### III. Discussion

First, the out-of-court statements outlined above are not hearsay because they are statements of the defendants' agent, pursuant to Rule 801(d)(2)(D). For the entirety of the relevant period, Simmons and others at her appraisal firm were retained and paid by the defendants to inspect and appraise properties belonging to the victims. The contractual relationship between the defendants and their appraisers is well-documented through engagement letters, payment invoices, and email correspondence where the defendants provide unambiguous instructions to the appraisers, including Simmons. The final appraisal reports prepared by those appraisers, including Simmons, explicitly identify the defendants as their clients. Simmons's communications with Anasta fall squarely within that agency relationship, including: (a) her discussion about the work the defendants had hired her to perform; (b) her requests for information in connection with that scope of work, which she performed on behalf of the defendants; and (c) her discussions with Anasta about the outcome of her appraisal, as well as her ongoing discussions with the defendants about changes the defendants were demanding to the report. In short, each category of out-of-court statements identified above—including the email correspondence between Simmons and Anasta about the appraisal Simmons had been hired by the defendants to perform, *see* MA-105— is admissible under Rule 801(d)(2)(D).[2]

---

[2] Indeed, in its motions *in limine*, the Government explicitly identified statements made by the defendants' appraisers as one category of statements that the Government intended to offer into evidence at trial. *See* Dkt. 195 at 26-27. While the Court reserved ruling subject to the identification of specific statements or documents, the Court observed that "the categories of statements and documents discussed in the Government's motion are likely admissible over a hearsay objection, either because they are not offered for their truth or they are not hearsay under Rule 801(d)(2)(D) or (E) of the Federal Rules of Evidence." Dkt. 218 at 2. Earlier this weekend, and after receiving the Government's anticipated exhibits for Anasta, counsel for the defendants identified that they would object to MA-105, in addition to any testimony by Anasta about his conversations with Simmons.

That those statements are being offered against the defendants does not change the analysis, so long as those statements "relate[] to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) (noting that the "authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate."). Here, as the person tasked with performing (and subsequently, revising) the appraisal ordered by the defendants, at their direction, Simmons's statements to Anasta about the scope of her engagement, the instructions she was being provided, and the changes she was being asked to make all fall squarely within Rule 801(d)(2)(D). That those statements were, in some respects, contrary to the defendants' interests (and are being offered against them) does not vitiate the agency relationship in which they were made. Indeed, a precondition to the application of Rule 801(d)(2)(D) is that the statement is being offered *against* an opposing party. *See* Fed. Rule of Evid. 801(d)(2)(D).

Second, even if any of Simmons's statements about the appraisal process somehow fall outside the agency relationship, these statements are offered not for their truth, but for their effect on the listener, or are otherwise not hearsay. On the first, Simmons' statements to Anasta about the price her firm had charged for the appraisal prompted Anasta, in turn, to demand a copy of the appraisal report so that he could confirm the cost of the appraisal. On the second, Simmons's requests for information, and her confirmation that the initial (and revised) draft report had been provided to the defendants, prompted Anasta to demand an update on the status of the appraisal from the defendants, and indeed, led to the defendants contacting Anasta to convey the outcome of the appraisal. And third, Simmons' telephone call to Anasta telling him about the defendants' instructions to her to modify the appraisal report led to Anasta reporting the defendants to the FBI, confronting the defendants, and, ultimately, publishing a negative review about the defendants' business. None of these statements are hearsay, given that they are offered to explain the subsequent steps the victim (and the defendants) took, as well as "the circumstances under which subsequent events occurred." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 89 (2d Cir. 2014).

*     *     *

Precluding the Government from eliciting Anasta's communications with an agent of the defendant would remove critical context for each of the subsequent actions both Anasta and the defendants took in parallel with the ongoing appraisal. As a result, and for the reasons set forth above, the Court should grant the Government's motion and permit the Government to elicit: (a) Anasta's discussions with the defendants' appraiser during the site inspection; (b) Anasta's correspondence with the defendants' appraisers while the appraisal report was being performed, *see* MA-105; and (c) Anasta's subsequent conversation with Simmons about the scope of the appraisal and the revisions she was being instructed to make in connection with the appraisal report.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Adabelle U. Ekechukwu
Patrick Gallagher
Daniel G. Nessim
Georgia V. Kostopoulos
Assistant United States Attorneys

cc: All counsel of record (by ECF)

5