

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 15, 2026

**VIA ECF**
The Honorable Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   <u>**United States v. Joseph Malvasio et al.**</u>, **23 Cr. 396 (JMF)**

Dear Judge Furman:

The defendants intend to introduce at trial a recording of a conference call among defendant Gregg Marcus, Victim-1, and several associates of Victim-1 (the "Recording," DX 2128).[1] While the Government has stated that it would stipulate to the authenticity of the recording, the Government respectfully moves to exclude the recording on the basis of hearsay.[2]

## I.   Relevant Background

In 2023, Victim-1 attempted to secure a $3 million loan for a commercial property from Global Capital Partners Fund ("GCPF"). After Victim-1 wired $15,000 to the defendants in connection with that loan, Victim-1 (along with his attorney, his broker, and others) had a conference call with Marcus to discuss certain aspects of the loan. The Recording, which is approximately fifty minutes long, captures that call.

Early in the recording, Marcus introduces himself as "Gregg Pierce, Global Capital Partners Fund." The call begins with a lengthy discussion of the proposed schedule for drawing down the loan, including the portion of the loan that Victim-1 would seek at closing. At one point, Marcus suggests that, while Victim-1 had indicated that he would seek $500,000 of the $3 million

---

[1] The defendants also intend to introduce a corresponding transcript of that recording as an aid for the jury (DX 2129). The Government expects to stipulate to the accuracy of that transcript, but objects to its use for the same reasons as the Recording itself.

[2] At the January 29, 2026 conference, the Court suggested that the Recording might be admissible not for its truth but as "evidence of the kinds of negotiations that went on and to show this particular victim's . . . sophistication." (Ex. A, Jan. 29, 2026 Tr. at 23:11-13.) The Court also noted that Rule 807 of the Federal Rules of Evidence might apply. (*See id.* at 23:15-21.) The Court then stated that "to the extent [the defendants] are asking me for a ruling pre-admitting this exhibit, the motion is denied." (*Id.* at 31:24-25.) The Government respectfully disagrees that the Recording is admissible for a non-hearsay purpose or under Rule 807 for the reasons stated below.

loan at closing, he could "take a million dollars at closing." Marcus says that if Victim-1 wanted to increase the amount of the draw at closing, the parties could make hand-written edits to the contract at the table. He states that would be his preference because he does not want to "ask[] for another" favor, referring to a change to the contract, because "they get annoyed at me." He then states, "We do a lot of deals. It's not, we're busy and we're winding up and at end, end month end we call it, and we get, you know, we're busy with closings."

Next, the participants discuss other aspects of the loan process, including the expiration date of the contract (which Marcus agrees they can extend by fifteen days), the need for an MAI appraisal, and GCPF's need to retain local counsel in Oregon. The conversation then shifts to costs, and Marcus states that a 1% commitment fee is due prior to closing. Victim-1's lawyer asks if that fee could be paid at closing, and Marcus says no, citing the language of the commitment letter. Marcus also rejects the idea that he may have said the opposite at any earlier point and directs Victim-1 and his associates to the language of the contract. In response to Victim-1 asking "is that a guarantee that we're closing?", Marcus replies, "You're doing a commitment. So we're guaranteeing we're closing. We have to meet the conditions, but yes, we will close the loan." After approximately 38 minutes, Marcus then drops off the call and the other participants stay on the line to discuss next steps and share their thoughts on Marcus for another approximately 12 minutes.

## II. Discussion

The Recording contains approximately 50 minutes of out-of-court statements from six individuals that the defendants intend to offer for their truth.[3] It contains lengthy, at times confusing, discussions of specific unrelated terms of the loan, such as the draw schedule and the need for Oregon counsel. It also contains several misstatements from Marcus. For example, he introduces himself as "Gregg Pierce," the fake name that he used when interacting with victims at GCPF. He also states that GCPF does "a lot of deals" and would be "busy with closings" at the end of the month. Nonetheless, the defendants seek to offer the Recording as a helpful piece of evidence for them because it (i) shows that victims were often counseled by lawyers and financial professionals; and (ii) Marcus engaged in discussions with victims about their loans and negotiated certain terms.

Counsel for Marcus has informed the Government that the defendants' position is that the Recording is admissible either under the residual exception, Rule 807 to the Federal Rules of Evidence, or because the statements will not be offered for their truth. Both arguments fail.

---

[3] Victim-1 has not testified at trial, and the Government does not expect to call Victim-1 (or any of the other participants on the Recording). The defendants' witness list also does not include Victim-1 or any other Recording participant.

2

### A.  The Residual Exception Does Not Apply

The Court should exclude the Recording because it is hearsay. No exception to the rule against hearsay applies. *See* Fed. R. Evid. 803, 804. Nor does Rule 801(d) apply because none of the participants on the Recording are testifying at trial, *see* Fed. R. Evid. 801(d)(1), and none of the statements are those of an opposing party, *see* Fed. R. Evid. 801(d)(2).

The residual exception does not apply either. "[T]he Second Circuit has instructed that the residual exception is to be used 'very rarely, and only in exceptional circumstances.'" *Great Lakes Reinsurance (UK) SE v. Herzig*, 673 F. Supp. 3d 432, 454 (S.D.N.Y. 2023) (quoting *Parsons v. Honeywell*, 929 F.2d 901, 907 (2d Cir. 1991)). Under Rule 807, a hearsay statement is not excluded by the rule against hearsay if (1) "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement"; and (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807. The Recording fails to meet either of those requirements.[4]

The Recording is not "supported by sufficient guarantees of trustworthiness" because it contains self-serving statements by Marcus, which the defendants seek to offer. In *Dawkins*, the Second Circuit held that Judge Ramos did not abuse his discretion by holding that a recorded phone conversation between the defendant and an investment adviser was not admissible under the residual exception. *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021). The Second Circuit explained that because the statements at issue were "not against [the defendant's] penal interest" but instead were "self-serving," they were "not accompanied by sufficient guarantees of trustworthiness as required by Rule 407." *Id.*; *see also United States v. Bryce*, 208 F.3d 346, 351 (2d Cir. 1999) (holding that a defendant's statements were sufficiently trustworthy because they were obtained via wiretap and were against the declarant's penal interest). Here, the defendants seek to offer the Recording because it contains a number of purportedly self-serving statements by Marcus, such as statements that Marcus made to Victim-1 and his team of advisors, as well as statements that those individuals made to Marcus, to show that Marcus had discussions with victims about certain aspects of the loans they sought. However, the Recording merely shows Marcus continuing to engage in the conspiracy to defraud by having a call with Victim-1 in order to convince him to wire the commitment fee. Regardless, the statements themselves are not explicitly against Marcus's self-interest. Therefore, they do not meet the "sufficient guarantees of trustworthiness" under the first prong of Rule 807. *See Dawkins*, 999 F.3d at 791.

Nor does the Recording meet the second prong of Rule 807 because it is not "the most probative evidence addressing" the points the defendants wish to make. At bottom, the defendants

---

[4] Rule 807 was amended in 2019 to contain only those two prongs. Following the amendment, the Second Circuit has continued to cite the *Bryce* test. *See United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021) ("[Rule 807] permits admission of hearsay if (i) it is particularly trustworthy, (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party.") (quoting *United States v. Bryce*, 208 F.3d 346, 350-51 (2d Cir. 1999). The Recording is not admissible under either test.

seek to introduce the recording to show that some victims were well counseled and that Marcus engaged in discussions with them about their loan applications. Specifically, at the January 29, 2026 conference, counsel for Marcus gave the following proffer for what the Recording would show at trial:

> [J]ust to put this in perspective, if we are going to have a lot of government witnesses going to recount conversations, presumably, from three, four, five years ago and they will have testimony, like, I said this to Mr. Marcus or Mr. Malvasio, and they said this to me. And they're going to characterize their conversations. There is one extant recording that we are aware of which actually shows how these discussions take place where these are sophisticated investors, these are real estate speculators, they have lawyers on the line, they have financial advisors on the line, they have a whole cast of characters as opposed to the government's presentation throughout this case of these poor victims seeking loans. I mean, it makes it sound like people are trying to buy their first home and they're being duped. What this recording does is it dispels all of that and it shows that there is a balance of power on both sides of the negotiation and things are in fact being negotiated, and I think it is a very good refutation of the picture that the government, I believe, will misleadingly present, of what happened in this case.

(Ex. A at 31:3-23.)

The Recording—which would allow the jury to hear almost an hour of out-of-court statements from half a dozen participants, none of which would be available for cross examination—is far from the most probative evidence on any of the points the defendants wish to make. In *Dawkins*, the Second Circuit further held that the recorded phone call at issue there failed to meet the requirements of Rule 807 because testifying witnesses had made similar points to the statements on the recorded call. *See* 999 F.3d at 791 (explaining that "[t]he phone call was not 'the most probative evidence addressing' the fact at issue" because a witness had testified about the points that the defendants sought to admit through the recorded phone call). Here, evidence at trial has already shown that certain victims were accompanied by other professionals during the loan application process. (*See e.g.,* Ex. B, Trial Tr. at 400:22-401:2 (D. Hawkins testifying that two brokers and a real estate agent were involved in his correspondence with Marcus.)

And of course, testimony from Victim-1 or any of his four advisors who participated in the call captured on the Recording would be far more probative evidence that the defendants could "obtain through reasonable efforts." Fed. R. Evid. 807(2). Such testimony would provide context for the call and their understanding of the statements made on it. Counsel for Marcus represented that the defendants were "going to have to send an investigator to Oregon to try to get one of the participants on the call to come to New York for trial." (Ex. A at 29:20-22.) None of the participants on the Recording are on the defendants' witness list. And nothing indicates that the defendants have attempted to secure their testimony through a Rule 17 subpoena or otherwise.

There are not "exceptional circumstances" that justify the "rare[]" situation where evidence should be admitted under the residual exception. *Great Lakes Reinsurance*, 929 F.2d at 454

4

(quoting *Parsons*, 929 F.2d at 907). To the contrary, courts routinely hold that recorded conversations do not meet the strict requirements of Rule 807. *See Dawkins*, 999 F.3d at 791; *ADT LLC v. Alarm Protection LLC*, 2017 WL 1881957, at *2 (S.D. Fla. May 9, 2017) (holding that recordings of customer complaints were not admissible under the residual exception); *see also AAMCO Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 799 (E.D. Pa. 2008) (holding that audio recordings of undercover shoppers were inadmissible under the residual exception). This Court should too.

### B. There Is No Non-Hearsay Basis for the Recording

The defendants have also argued that the Recording should be admitted not for its truth. But it is impossible to understand the relevance of the Recording if the statements it contains are not offered for their truth. The defendants seek to offer the statements made on the Recording, by Marcus and others, as evidence that the jury should look to as refutation of testifying victims' testimony. As counsel for Marcus explained, the defendants seek to admit the Recording, because it "actually shows how these discussions take place." (Ex. A at 31:10.) For example, the defendants will highlight from the Recording that "things are in fact being negotiated" in order to argue that the jury should "refut[e]" the Government's presentation of evidence. (*Id.* at 31: 21-23.) The use of statements from the Recording to show what "actually happened" and to contradict other victims' testimony constitutes hearsay. The Recording should not be admitted for any purpose.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
    Patrick J. Gallagher
    Georgia Kostopoulos
    Adabelle Ekechukwu
    Daniel Nessim
    Assistant United States Attorneys

cc: Counsel of Record (by ECF)

5