**ELJN** | ELLIOTT LEVINE JAROSLAW NEILS LLP

One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
tel: +1 (212) 321-0510

www.eljnlaw.com

Ilene Jaroslaw
ijaroslaw@eljnlaw.com
Direct: +1 (917) 763-9852

May 31, 2026

**Via ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:    United States v. Joseph Malvasio *et al.*
>        23 Cr. 396 (S-1) (JMF)

Dear Judge Furman:

On May 20, 2026, at approximately 9:49 p.m., the government advised that it intended to call Christopher Polk as a witness at trial, following his entry of a guilty plea that afternoon pursuant to a cooperation agreement.  On May 21 and May 28, the government made supplemental disclosures in connection with Mr. Polk's anticipated testimony, which topics include statements allegedly made to him by Joseph Malvasio about Gregg Marcus and Mr. Marcus's alleged activities at Global Capital Partners Fund (GCPF) (the "Challenged Statements").

Mr. Polk does not know Mr. Marcus, Ex. A at 1; has never had any dealings with Mr. Marcus, Ex. B at 1, Ex. C at 1; and will admit that the "[o]nly things that CP [Mr. Polk] knows about GM [Mr. Marcus] came from what JM [Mr. Malvasio] told him." Ex. D at 5.  Moreover, after hearing the Challenged Statements, Mr. Polk "didn't want anything to do with GM and his business" or to emulate Mr. Marcus's alleged business practices at GCPF.  Ex. E at 1.

Mr. Polk should be precluded from testifying about the Challenged Statements because they are hearsay and do not fall within the exception found at Federal Rule of Evidence 801(d)(2)(E), which extends only to co-conspirator statements that "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990).  Instead, the Challenged Statements had the opposite effect, sowing distrust and discouraging Mr. Polk's involvement—and in some cases amounted to no more than idle chatter that has been held not to further a conspiracy.  The Challenged Statements are therefore not "in furtherance" of a conspiracy and should be excluded.

ELLIOTT LEVINE JAROSLAW NEILS LLP

### I. The Challenged Statements Should Be Excluded As Hearsay Because They Were Not Made In Furtherance of a Conspiracy

To admit a statement under Rule 801(d)(2)(E), "a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). Statements made "in furtherance" of a conspiracy must "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," such as by "provid[ing] reassurance," "seek[ing] to induce a coconspirator's assistance," or "foster[ing] trust and cohesiveness." *Maldonado-Rivera*, 922 F.2d at 958-59. Conversely, "**idle chatter**" or a mere **retrospective narrative** of a co-conspirator's conduct do not satisfy the "in furtherance" standard. *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980) (emphasis added). The "in furtherance" requirement is designed to assure reliability as well as declarant's authority to speak for defendant. *Id.*

Among the Challenged Statements, Mr. Polk is expected to testify that Mr. Malvasio told him:

- personal details about Mr. Marcus, such as that he "had a HUD problem, some legal problem," Ex. D at 5; "was a convicted felon but had paid restitution," Ex. E at 1; and used the pseudonym "Gregg Pierce" because "[i]f you Google his real name, would come back to his conviction," Ex. F at 3;

- that Mr. Marcus tells borrowers inaccurate information about appraisals, including that Mr. Marcus "was really good at selling the loans . . . Later CP learned that meant lying to customers," Ex. E at 1; Mr. Marcus "could say anything [about the appraisal] and it didn't matter, just to get the fees in," Ex. D at 5; and if Mr. Marcus "says it's to-be-completed, that's fine, it's going to be as-is," Ex. G at 4;[1]

- that Mr. Marcus "would keep talking to [prospective borrowers] for months" to "try to get the deal in the door," while Mr. Malvasio "said he wouldn't waste more than a day on it" himself, Ex. G at 3;

- Mr. Marcus and his spouse were "responsible for the internet-facing part of the business," Ex. G at 3;

- that Mr. Marcus allegedly handled negative reviews of GCPF: Mr. Marcus "ran th[e] part of the business" that paid a service to suppress bad reviews of GCPF and write fake reviews, Ex. F at 3, whom his husband had helped find, Ex. H at 2; and Mr. Marcus

---

[1] *See also* Ex. D at 5 (alleging without further specificity that "JM told CP other lies that GM was telling borrowers").

ELLIOTT LEVINE JAROSLAW NEILS LLP

had to be "shield[ed] by Mr. Malvasio "about being deposed in one of th[e] cases" involving negative reviews of GCPF because "[a]ccording to JM, 'Gregg can't make it through the first question,'" Ex. H. at 2;

- that Mr. Marcus's allegedly was responsible for "managing the bank accounts," Ex. G at 3; "would set up two different accounts" with "an automatic sweep . . . so that borrowers couldn't do a charge back," Ex. H at 3; and "handle[d] the complaints / fix things with the banks to keep the accounts open" when there were fraud alerts, Ex. G at 3.

As further discussed below, the Challenged Statements had the *inverse* effect of furthering the conspiracy, and in some cases amounted to no more than casual conversation, or "retrospective narration."

### A.       The Challenged Statements Fostered Distrust and Discouraged Mr. Polk's Involvement in the Alleged Conspiracy

Mr. Polk's reaction to the Challenged Statements demonstrates that they were not made "in furtherance" of a conspiracy. Rather than reassure Mr. Polk, encourage his participation, or foster cohesiveness, *Maldonado-Rivera*, 922 F.2d at 958-59, the Challenged Statements had the complete opposite effect: Mr. Polk categorically "didn't want anything to do with GM and his business" GCPF. Ex. E at 1.

The Challenged Statements fostered Mr. Polk's *dis*trust of Mr. Marcus. Mr. Polk "did not like talking about MARCUS because it bothered POLK," Ex. A at 1; "[d]idn't like that GM had a criminal history," Ex. E at 1; "[d]idn't want there to be blowback to CP from GM's criminal history/criminal issues," Ex. H at 1; and "was skeptical" about Mr. Marcus's use of an alias because he felt that "either you change your name or you don't." Ex. H at 2.

Likewise, the Challenged Statements *dis*couraged Mr. Polk from becoming involved with or emulating GCPF; rather, he wanted to be "insulate[d] from Global." Ex. H at 3. Mr. Polk "didn't like" that Mr. Malvasio said that Mr. Marcus was allegedly telling borrowers that appraisals would be on a "to be completed" basis because Mr. Polk "wanted the paperwork to match what they were telling the borrowers." Ex. E at 1. Accordingly, when Mr. Malvasio asked Mr. Polk to "change his paperwork" to avoid disclosing that appraisals would be on an "as-is" basis, Mr. Polk refused. Ex. G at 3-4. Nor was Mr. Polk reassured by the remarks about how Mr. Marcus allegedly handled the bank accounts and fraud alerts; rather, the "[i]ssue with the banks started to concern" Mr. Polk and made him worry "this entire thing is going to explode." Ex. H at 4.

ELLIOTT LEVINE JAROSLAW NEILS LLP

Rule 801(d)(2)(E) encapsulates the theory that alleged co-conspirators act as agents of one another, and as such, are "deemed to have authorized the acts and declarations of the other undertaken to carry out their joint objective." *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002); *Gigante*, 166 F.3d at 83 ("It is the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E). Moreover, statements that *undermine* an alleged conspiracy, such as the Challenged Statements, are outside the scope of that "agency" and thus not admissible, because they cannot be deemed "authorized" by the defendant co-conspirator. *See id.* Accordingly, the Challenged Statements should be excluded because "[s]tatements which tend to *frustrate or hinder* the goals of the conspiracy . . . cannot reasonably be interpreted to further that conspiracy." *United States v. Saneaux*, 365 F. Supp. 2d 493, 501 (S.D.N.Y. 2005).

**B.      Some Challenged Statements Are Mere "Idle Chatter" and "Retrospective Narrative"**

Moreover, some of the Challenged Statements fail to satisfy the "in furtherance" requirement for other reasons. For instance, statements making fun of Mr. Marcus's purported difficulties at a deposition are "merely joking references to a past event" that have been held not to further a conspiracy. *United States v. Desena*, 260 F.3d 150, 157-58 (2d Cir. 2001) (statements "making fun of . . . inexpert attempt" at arson should have been excluded as "mere idle chatter"). Likewise, the statements regarding Mr. Marcus's prior legal issues should be excluded because "[m]ere bragging about past criminal exploits does not constitute statements made to build trust or provide reassurance." *United States v. Johnson*, 469 F. Supp. 3d 193, 216 (S.D.N.Y. 2019). Because these statements "cannot conceivably be interpreted to advance the accomplishment of conspiracy objectives," they should be excluded. *Saneaux*, 365 F. Supp. 2d at 501.

For all the foregoing reasons, testimony from Mr. Polk that Mr. Malvasio purportedly made statements about Mr. Marcus are hearsay, and Mr. Malvasio is not available for cross-examination. No applicable hearsay exception applies. Therefore, the government should be precluded from introducing the Challenged Statements into evidence.

Respectfully submitted,

Ilene Jaroslaw
Rachel Rodriguez
Sara Probber
ELLIOTT LEVINE JAROSLAW NEILS LLP

ELLIOTT LEVINE JAROSLAW NEILS LLP

60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510
ijaroslaw@eljnlaw.com
*Counsel for Defendant Gregg Marcus*

cc:  All counsel, via ECF